**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ELECTROLUX CONSUMER PRODUCTS, INC.; | : |
| | : |
| ANOVA APPLIED ELECTRONICS; and | : |
| ELECTROLUX PUERTO RICO CORP. | : |
| | : |
| Plaintiffs, | : |
| v. | : |
| | : |
| U.S. CUSTOMS AND BORDER | :    Court No. 26-3351 |
| PROTECTION; RODNEY S. SCOTT, in his | : |
| official capacity as Commissioner of U.S. | : |
| Customs and Border Protection; and the | : |
| UNITED STATES, | : |
| Defendants. | : |

**COMPLAINT**

1. Plaintiffs, ELECTROLUX CONSUMER PRODUCTS, INC., ANOVA APPLIED ELECTRONICS and ELECTROLUX PUERTO RICO CORP. (collectively "Plaintiffs") are related companies that 26, consumables, and accessories, and related products from China, Thailand, Italy, and possibly other countries.

2. Electrolux sources products globally, including from China, Thailand, Italy and other countries.

1

3. Pursuant to Executive Orders by President Trump asserting authority under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.*, commencing on February 4, 2025, the United States has imposed upon importers an obligation to pay duties on goods imported from most countries including, but not limited to, from Canada, China, India and Mexico.

4. Consistent with the Executive Orders, corresponding amendments to the Harmonized Tariff Schedule of the United States ("HTSUS"), and guidance from U.S. Customs and Border Protection ("CBP"), Plaintiffs have deposited IEEPA duties with CBP in relation to entries of merchandise for which it is the importer of record.

5. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628,646 (2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

6. Plaintiffs seek an order from this Court granting the relief necessary to ensure that Plaintiffs secure a refund of all IEEPA duties determined imposed and collected unlawfully as well as pre-judgment and post-judgment interest as provided by law.

7. That relief includes:

   a. A declaration that the IEEPA duties were unlawfully imposed and collected;

b.  An injunction preventing CBP from further collection of the IEEPA duties;

c.  An order requiring CBP to refund all IEEPA duties Plaintiffs have deposited with interest as provided by law.

## I.    PARTIES

8.  Plaintiffs are U.S. entities that import a variety of merchandise including major and small household appliances and components, consumables, and accessories and related products as well as machinery, equipment, and materials related to the production of these goods.

9.  Plaintiffs have deposited IEEPA duties with CBP in relation to entries of merchandise for which they are the importer of record.

10. Defendant United States Customs and Border Protection is an entity within the United States Department of Homeland Security. CBP is the agency responsible for the collection of customs duties from importers and the final determination of duties, taxes, and fees the importer owes as a result of the importation.

11. Defendant Rodney S. Scott is the Commissioner of CBP and is the individual who will effectuate the relief sought in this action.

12. Defendant United States is the party that has received the IEEPA duties challenged in *Learning Resources* and other pending litigation.

## II. PERMISSIVE JOINDER

13. Plaintiffs all seek relief arising out of the same unconstitutional imposition and collection of IEEPA duties by CBP.

14. Plaintiffs have deposited IEEPA duties with CBP for entries of merchandise for which they are the importer of record and may each seek separate relief.

15. The question of law whether IEEPA and the National Emergencies Act authorize the President to impose tariffs on imports into the United States is common to the plaintiffs.

16. Under Rule 20 of the Rules of this Court, Permissive Joinder of the plaintiffs in a single action is appropriate. See. *Applewhite v. Reichhold Chemicals*, 67 F.3d 571, 574 (5th Cir. 1995).

## III.    JURSDICTION & STANDING

17. The Court of International Trade has subject-matter over this action under 28 U.S.C § 1581(i)(1)(B). *See Learning Resources,* 146 S. Ct. 628 at 638 n.1 ("We agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the CIT.")

18. Plaintiffs are the importers of record of merchandise on which CBP collected the IEEPA tariffs challenged in this action. Plaintiffs have suffered injury as a result of the collection of illegally imposed tariffs. The relief Plaintiffs seek will redress that injury. Plaintiffs, therefore, have standing to bring this lawsuit.

## VI.    TIMELINESS

19. An action under 28 U.S.C. § 1581(i) must be brought within two years after the cause of action first accrues. 28 U.S.C. § 2636(i).

20. The initial IEEPA tariffs covering products imported from Canada, Mexico, and China came into effect for merchandise imported on or after 12:01 a.m. eastern time of February 4, 2025. See, Executive Order 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Executive Order 14193*, Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 9,113 (Feb. 7, 2025); Executive Order 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb 7, 2025).

21. Plaintiffs commenced this action within two years of February 4, 2025, the earliest date on which the cause of action can arguably have accrued and is, therefore, timely.

## V.    RELEVANT FACTS AND LAW

### A.    IMPOSING TARIFFS IS A CORE POWER THE CONSTITUTION ASSIGNS TO CONGRESS

22. The United States Constitution, Art. I, § 8, cl. 1 provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises…" and "[t]o regulate Commerce with foreign Nations." *Id.* at cl. 3.

23. Any Congressional delegation of taxing authority to the President must include an "intelligible principle" to guide and limit the President's exercise of that legislative function. *FCC v. Consumers' Rsch.*, 606 U.S. 656, 673 (2025)("To distinguish between the permissible and the impermissible in this sphere, we have long asked whether Congress has set out an 'intelligible principle' to guide what it has given the agency to do.").

24. When Congress delegates powers to address issues of deep political or economic consequence, it must do so through a clear statement to that effect. *Biden v. Nebraska*, 600 U.S. 477, 506, (2023).

25. IEEPA contains no reference to tariffs, duties, or taxes, among the list of powers delegated to the President to address international economic emergencies.

26. IEEPA lacks a clear statement of delegation in and any intelligible principle guiding the exercise of tariff authority. IEEPA, therefore, does not authorize the challenged Executive Orders and the resulting collection of IEEPA tariffs. *Learning Resources,* 146 S. Ct. 628 at 668 n.6 ("Even if the nondelegation doctrine should apply differently when congressional legislation and executive actions implicate inherent Article II powers, . . . none of that means it should do so where (as here) the President derives whatever authority he has only from Congress.")

**B.    THE IEEPA TARIFFS**

27. On February 1, 2025, citing IEEPA, in Executive Order14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025), the President imposed a 25% *ad valorem* tariff on products of Canada.

28. On February 1, 2025, citing IEEPA, in Executive Order14194, *Imposing Duties To Address the Situation at Our Southern Border,* 90 Fed. Reg. 9117 (Feb 7, 2025), the President imposed a 25% *ad valorem* tariff on products of Mexico.

29. On February 1, 2025, citing IEEPA, in Executive Order 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 7, 2025) the President imposed a 10% *ad valorem* tariff on products of China.

30. On February 5, 2025, in Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025), the President cited IEEPA and the National Emergencies Act, 50 U.S.C. § 1601 ("NEA") as authority to amend EO 14195 to allow temporarily the continued application of the *de minimis* rule, 19 U.S.C. § 1321, for goods from China.

31. On March 3, 2025, in Executive Order 14288, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 11,463 (Mar. 7, 2025), the President cited IEEPA, NEA,

and other laws as authority to increase the IEEPA tariff on goods of China to 20% *ad valorem*.

32. On April 2, 2025, in Executive Order 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025), the President cited IEEPA, NEA, and other laws as authority to imposed a 10% *ad valorem* tariff on products from all trading partners, effective April 5, 2025, and rates from 11% to 50% on products from trading partners enumerated in Annex I to the order, effective April 9, 2025, including a 34% *ad valorem* tariff on products of China.

33. On April 8, 2025, in Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025), the President cited IEEPA, NEA, and other laws as authority to increase the *ad valorem* tariff on products of China from 34% to 84%.

34. On April 9, 2025, in Executive Order 14226, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (April 15, 2025), the President cited IEEPA, NEA, and other laws as authority to suspend for a period of 90 days, except with respect to products of China, the *ad valorem* duty rates imposed on products from trading partners enumerated in Annex I to Executive Order 14257, and increase the *ad valorem* tariff on products of China from 84% to 125%.

35. On July 31, 2025, in Executive Order 14325, *Amendment to Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 37957 (*August 6, 2025*),* the President cited IEEPA, the NEA and other laws as authority to impose a 35% *ad valorem* tariff on products of Canada.

36. On August 6, 2025, in Executive Order 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38701 (April 11, 2025), the President cited IEEPA, the NEA, and other laws as authority to impose a 25% *ad valorem* tariff on products of India.

37. On July 30, 2025, in Executive Order 14323, *Addressing Threats to the United States by the Government of Brazil,* 90 Fed. Reg. 37739 (Aug. 5, 2025), the President cited IEEPA, the NEA, and other laws as authority to impose a 40% *ad valorem* tariff on products of Brazil.

38. Plaintiffs deposited IEEPA duties with U.S. Customs and Border Protection upon its importation of merchandise.

39. Based on CBP's 314-day process, entries subject to IEEPA tariffs commencing February 4, 2025 will have begun liquidating on or about December 15, 2025.

C. **AMENDMENTS TO THE HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES**

40. The Harmonized Tariff Schedule of the United States, 19 U.S.C. § 1202, is the statute that sets forth the rates of duty applicable to merchandise imported into the United States. *Schlumberger Tech. Corp. v. United States*,

9

845 F.3d 1158, (Fed. Cir. 2017)(The HTSUS "shall be considered to be statutory provisions of law for all purposes."); 19 U.S.C. § 3004(c)(1).

41. Each modification or change made to the HTSUS by the President under authority of law is also considered to be statutory. 19 U.S.C. § 3004(c)(1)(C)

42. The merchandise to which IEEPA tariffs apply, the rates applicable, exclusions, and other information implementing each of the IEEPA tariffs is contained in the HTSUS as amended to reflect the Presidential Executive Orders.

43. Therefore, this matter arises out of the HTSUS, which is a law of the United States providing for revenue from imports or tonnage or providing for tariffs, duties, fees, or other taxes upon the importation merchandise for reasons other than the raising of revenue within the meaning of 29 U.S.C. § 1581(i).

**D.    THE UNITED STATES SUPREME COURT HAS HELD IEEPA DOES NOT AUTHORISE THE PRESEIDNET TO IMPOSE TARIFFS**

44. This Court considered the legality of these tariffs in *V.O.S. Selections* and held, in a unanimous three-judge panel, that the President exceeded the authority Congress delegated to him in IEEPA. The Court declared the tariffs invalid and enjoined further collection. *V.O.S. Selections, Inc.*, 772 F. Supp. 3d 1350, 1383 (CIT 2025)

45. The United States Court of Appeals for the Federal Circuit, sitting *en banc*, affirmed this Court's decision. *V.O.S. Selections, Inc.,* 149 F.4th at 1340.

46. The United States District Court for the District of Columbia reached the same conclusion in *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209, 233 (D.D.C. 2025), *cert. granted before judgment*, 146 S. Ct. 628 (2026).

47. In *Learning Resources*, which was argued and decided with *V.O.S. Selections, Inc.,* the Supreme Court held that IEEPA does not authorize the President to impose tariffs.

## CLAIMS

### COUNT I – THE CHALLENGED IEEPA TARIFFS ARE WITHOUT LAWFUL SUPPORT AND ARE UNENFORCEABLE

48. Plaintiffs incorporate paragraphs 1-47 above.

49. Per the conclusion of the Supreme Court in *Learning Resources*, IEEPA does not include a valid delegation authorizing the President to impose the tariffs present in the challenged tariffs.

50. Plaintiffs seek an order from this Court applying the binding decision of the Supreme Court finding that the challenged IEEPA tariffs to be unlawful, enjoining the CBP from any further collection of them, and ordering CBP to refund all IEEPA duties plaintiff has deposited with interest as provided by law.

## COUNT II – THE EXECUTIVE ORDERS AND IEEPA TARIFFS ARE UNCONSTITUTIONAL

51. Plaintiffs incorporate paragraphs 1-47 above.

52. The authority to lay and collect taxes, duties, imposts and excises and the power to regulate foreign commerce rests with Congress. Art. I, § 8 cls. 1 and 3.

53. The imposition of the challenged IEEPA tariffs is an unheralded exercise of power with vast economic and political significance.

54. In the absence of clear congressional authorization, the exercise of tariff authority under IEEPA is an unconstitutional assumption of legislative power in presidential action.

## COUNT III – DECLARATORY RELIEF

55. Plaintiffs incorporate paragraphs 1-47 above.

56. Plaintiffs are the importer of record of merchandise imported into the United States and has deposited with CBP duties resulting from the challenged Executive Orders and IEEPA tariffs.

57. Plaintiffs have, therefore, been injured by the imposition and collection of unconstitutional and invalid IEEPA tariffs.

58. The challenge to the validity of the IEEPA tariffs is an actual controversy before this Court.

59. This Court has authority under 28 U.S.C. § 2201(a) to declare plaintiff's rights and legal relations with respect the challenged IEEPA tariffs.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court issue a judgment:

a. Finding that IEEPA does not authorize the President to impose the challenged IEEPA tariffs;

b. Finding that the challenged IEEPA tariffs are *ultra vires* and, therefore, void *ab initio*;

c. Enjoining CBP from further collection of the challenged IEEPA tariffs with respect to Plaintiff's importations;

d. Ordering CBP to refund all challenged IEEPA tariffs Plaintiffs have deposited to date and at any future point with interest as provided by law;

e. Awarding attorney's fees and costs; and

f. Providing such other relief as the Court deems proper and necessary.

Respectfully submitted,

/S/ Lawrence M. Friedman

Lawrence M. Friedman

Marvin E. McPherson
Barnes, Richardson & Colburn, LLP
303 East Wacker Drive
Suite 305
Chicago, IL 60601
O: 312 297-9554
E: lfriedman@barnesrichardson.com

July. 24, 2026

13